IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CHUNCHENG REN and ELIZUR INTERNATIONAL, INC.,<br>　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE,<br>　　Defendant. | )<br>)<br>)<br>)<br>)　　Civil Action No. 2:19CV659 (RCY)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion for Summary Judgment (ECF No. 27), filed by the United States Citizenship and Immigration Service, and Plaintiffs' Motion for Summary Judgment (ECF No. 33), filed by Chuncheng Ren and Elizur International Inc. Plaintiffs are asking the Court to review and overturn the United States Citizenship and Immigration Service's denial of a permanent EB1C visa to Chuncheng Ren, while Defendant is asking the Court to uphold the denial. The parties filed these motions pursuant to Federal Rule of Civil Procedure 56(a). The Court heard oral argument on March 2, 2021 (ECF No. 41). For the reasons stated below, the Court will GRANT Defendant's Motion for Summary Judgment and DENY Plaintiffs' Motion for Summary Judgment.

**I. STATUTORY FRAMEWORK**

1. The Immigration and Nationality Act

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this a civil action arising under a law of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. The INA creates "a comprehensive federal statutory scheme for regulation of immigration and naturalization." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582,

587 (2011) (quoting *De Canas v. Bica*, 424 U.S. 351, 353 (1976)). The INA establishes two broad categories of employment-based visas: non-immigrant (temporary) and immigrant (permanent). *See* 8 U.S.C. §§ 1101(a)(15), 1153(b), and 1184.

For both types of non-immigrant and immigrant visas in this action, only a United States employer may petition for the visa; the "alien" may not petition on his or her own behalf. 8 U.S.C. §§ 1101(a)(15)(L), 1153(b)(1); 8 C.F.R. §§ 204.5(j) and 214.2(l)(2). The employer petitioner "bears the burden of establishing eligibility by a preponderance of the evidence" for an immigrant visa. *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (citation omitted).

The first type of visa in this action is a non-immigrant temporary visa under the L1A category for an intracompany transferee executive or manager. (Compl., ECF No. 1, at 2); 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l). The L1A visa requires a petitioning company to establish three criteria: (1) an alien who, within three years preceding the time of his or her application for admission into the United States, has been employed abroad continuously for one year by a firm or corporation or other legal entity or parent, branch, affiliate, or subsidiary thereof; (2) and who seeks to enter the United States temporarily in order to render his or her services to a branch of the same employer or a parent, affiliate, or subsidiary thereof (3) in a capacity that is managerial, executive, or involves specialized knowledge. 8 U.S.C. § 1101(a)(15)(L). The maximum amount of time that one can stay in the United States on an L1A visa is seven years. 8 C.F.R. § 214.2(l)(15)(ii).

The second type of visa at issue is an immigrant permanent EB1C visa for a multinational executive or manager. (Compl. at 2); *see* 8 U.S.C. § 1153(b)(1)(C). The EB1C visa requirements are substantially similar to the L1 visa requirements. The petitioning company must establish: (1) an alien, in the three years preceding the time of the alien's application for classification and

admission into the United States under this subparagraph, has been employed for at least one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof; (2) and the alien seeks to enter the United States in order to render services to the same employer or to a subsidiary or affiliate thereof; (3) in a capacity that is managerial or executive. 8 U.S.C. § 1153(b)(1)(C).

The INA sets forth the qualification requirements for each visa and defines managerial and executive capacity. The definitions are as follows:

> (A) The term "managerial capacity" means an assignment within an organization in which the employee primarily—
> (i) manages the organization, or a department, subdivision, function, or component of the organization;
> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101 (a)(44)(A).

> (B) The term "executive capacity" mean an assignment within an organization in which the employee primarily—
> (i) directs the management of the organization or a major component or function of the organization;
> (ii) establishes the goals and policies of the organization, component, or function;
> (iii) exercises wide latitude in discretionary decision-making; and
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101 (a)(44)(B).

The United States Citizenship and Immigration Service ("USCIS") administers U.S. immigration laws and adjudicates immigration benefit requests. U.S. Citizenship & Immigr. Servs., Policy Manual, vol 1, part A, ch. 1 (2021), https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-1. USCIS decides whether a beneficiary works in a managerial or executive capacity, and whether a visa petition should be approved or denied. *Id.* vol. 1, part E, ch. 1. The beneficiary is an "alien" who has a visa petition filed on his or her behalf.

2. The Administrative Procedure Act

The Administrative Procedure Act ("APA") allows for judicial review of a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "[I]n a case involving review of a final agency action under the APA . . . summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Armah-El-Aziz v. Zanotti*, No. 1:15-cv-261, 2015 WL 4394576, at *3 (E.D. Va. July 16, 2015) (internal quotation marks and citations omitted). Pursuant to the APA, a court may "'set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)).

"[T]he ultimate standard of review is a narrow one," and "the court is not empowered to substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The Court must determine "whether the agency has committed a 'clear error of judgment.'" *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (quoting *Overton Park*, 401 U.S. at 416). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma*

4

*Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993)).

"An agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Casa de Md.*, 924 F.3d at 703 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. The "function" of the Court "is to scrutinize the Agency's activity to discern whether the record reveals that a rational basis exists for the Agency's decision." *Reynolds Metals Co. v. U.S. Env't Prot. Agency*, 760 F.2d 549, 558 (4th Cir. 1985) (citations omitted).

## II. FACTUAL HISTORY

The Administrative Procedure Act ("APA") generally confines review of an Executive Branch action to the administrative record of proceedings before the pertinent agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Therefore, when summary judgment is based solely on the administrative record, "there can be no genuine issue of material fact.". *R. R. Donnelley & Sons Co. v. Dickinson*, 123 F. Supp. 2d 456, 458 (N.D. Ill. 2000). Additionally, both parties agreed during the January 11, 2021 status conference that there are no undisputed facts in this action. The Court will therefore recount the relevant facts from the Administrative Record ("AR") submitted by the Defendant on October 22, 2020. (ECF Nos. 25-26).

Plaintiff Chuncheng Ren ("Ren") is a native and citizen of China, while Plaintiff Elizur International, Inc. ("Elizur") is a wholly-owned U.S. subsidiary of Chinese company Triple-R International Glass Co., Ltd. ("Triple-R"). (AR 144, 154.) Elizur was incorporated in 2014 when Triple-R sought to expand its operations into the United States. (AR 153.) Elizur is "engaged in the international trading and marketing of high quality, handmade glass personal care products and crystal handicraft products manufactured or outsourced" by its parent company, Triple-R. (AR 153.)

Ren served as Triple-R's general manager from November 2009 until approximately March 2015, when he joined Elizur as its president. (AR 15.) Ren's original visa was a temporary L1A visa that was valid from January 2, 2015 to January 1, 2016. (AR 167.) Elizur filed an extension petition that was approved for the period of January 2, 2016 to January 1, 2018. (AR 165.) Elizur then filed a third extension petition that was approved for the period of January 2, 2018 to January 1, 2020. (AR 163.)

In May 2018, Elizur, as petitioner, filed a Form I-140 Immigrant Petition for Alien Workers for Ren, seeking to classify him as a multinational executive or manager under 8 U.S.C. § 1153(b)(1)(C). (AR 143-151.) With the petition, Elizur provided the USCIS with forty supporting documents, which included items such as Ren's employment verification letter, Ren's resume, Elizur's Articles of Incorporation, Elizur's recent bank statements, Triple-R's Business License, Triple-R's Financial Statements, and pictures of Triple-R's product catalog. (AR 150-947.)

On July 2, 2018, the USCIS issued a Request for Evidence ("Request") to Elizur, advising it that the agency required "additional evidence to process [the] form." (AR 8-12.) The Request stated that "[t]he petitioner has not established that the beneficiary's foreign employment was in a qualifying managerial or executive capacity." (AR 9.) The Request further said that "[a] detailed

job description is crucial, as the duties themselves will reveal the true nature of the beneficiary's foreign and proposed employment." (*Id.*) Additionally, the Request stated that "based on the evidence presented, the petitioner has not demonstrated that the beneficiary will be engaged in a managerial or executive function with [Elizur]." (AR 11.) The Request reiterated that "the petitioner has not presented a comprehensive description of the job duties to be performed by the beneficiary at the proposed U.S. position or that the beneficiary ever functioned in a managerial or executive capacity with the foreign corporation." (*Id.*) The Request asked for specific evidence including "[a]ll specific daily duties (rather than categories of duties)" of Ren and the "[p]ercentage of time spent on each duty." (*Id.*)

On August 20, 2018, Plaintiffs replied to the Request with a letter and eight exhibits describing Ren's duties at Triple-R and Elizur. (AR 13- 132.) The first exhibit was a letter from Yan Zhu, the Deputy General Manager of Triple-R. (AR 18-25.) The letter described Ren's duties at Triple-R and provided more information about the employees who directly reported to Ren. (*Id.*) The second exhibit was an organizational chart of Triple-R, showing Ren as the General Manager. (AR 27-28.) The third exhibit was a letter from John Redding, the Chief Operating Officer of Elizur. (AR 30.) This letter included a breakdown of Ren's duties and the approximate amount of time he spent on each category of duties at Elizur. (AR 32-39.) The fourth exhibit was an organizational chart of Elizur, showing Ren as the President/CEO. (AR 41-45.) This exhibit also included job descriptions of company employees. (AR 46-87.) The remaining exhibits included diplomas or transcripts of employees of the petitioner, examples of email communications between Ren and other employees, tax forms for the companies, and Ren's New Form I-94 reflecting his most recent U.S. entry. (AR 89-199.)

Despite this additional information provided by Elizur, on September 30, 2019, USCIS denied Elizur's I-140 Petition ("Denial"). (AR 2-7.) The Denial informed Elizur that the documentary evidence provided in response to the Request was insufficient to demonstrate either that Ren was employed in a qualifying capacity as a multinational executive or manager with Triple-R, or that he would function in a managerial or executive capacity for Elizur. (*Id.*) The Denial stated that Elizur's reply to the Request listed tasks that were "extremely vague and duplicative as to give any meaningful insight into the beneficiary's actual day-to-day duties." (AR 5.) Additionally, the Denial said that "[t]he petitioner's job assignment description does not clearly convey an understanding that the beneficiary would devote the primary part of his assignment to qualifying duties." (AR 6.) The Denial further claimed that "[t]he petitioner submitted a general description of the beneficiary's job duties with the Chines[e] and U.S. Companies that was more indicative of an individual that would be providing services to the enterprise or at most acting as a first line supervisor." (AR 7.) The Denial concluded that "the petitioner has not established eligibility for the benefit sought," and therefore "USCIS is denying this Form I-140." (*Id.*)

On November 20, 2019, Elizur filed a fourth extension for Ren's temporary visa that was approved for January 2, 2020, to January 1, 2022. (Ex. 2 to Pls.' Mot. Summ. J., ECF No. 34-2.) At the end of the fourth extension, Ren will have utilized the maximum seven years that one can stay in the United States on a L1A visa, and he and his family will have to leave the country. *See* 8 C.F.R. § 214.2(l)(15)(ii).

### III. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on December 5, 2019 (ECF No. 1), and the action was originally assigned to U.S. District Judge Arenda Allen. A Rule 16(b) Scheduling Conference was held on June 2, 2020, and a bench trial was set for March 2, 2021. (ECF No. 15.) Defendant filed

8

Defendant's Motion for Summary Judgment on October 22, 2020. (ECF No. 27.) Plaintiffs filed Plaintiffs' Motion for Summary Judgment on November 23, 2020. (ECF No. 33.) The case was reassigned to the undersigned on November 24, 2020. Defendant's Motion for Summary Judgment became ripe on December 18, 2020, and Plaintiffs' Motion for Summary Judgment became ripe on January 4, 2021. (ECF Nos. 36, 38.) The Court held a hearing on the Motions by Zoom on March 2, 2021. (ECF No. 41.)

## IV. LEGAL STANDARD

The Federal Rules of Civil Procedure provide the standard of review for this case. Rule 56(a) states that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The Court must view the evidence "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (citing *Baynard v. Malone*, 268 F.3d 228, 234 (4th Cir. 2001)).

## V. DISCUSSION

<u>1. USCIS Did Not Commit a Clear Error of Judgment in Concluding that Ren Did Not Work in a Managerial or Executive Capacity at Triple-R</u>

The standard of review under the APA is "narrow," and the Court is "not authorized 'to substitute its judgment for that of the agency.'" *Armah-El-Aziz*, 2015 WL 4394576, at *6 (quoting *Overton Park*, 401 U.S. at 416). The Court is to determine whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court may only determine whether USCIS acted outside of its legal authority or

committed a "clear error of judgment." *See Holly Hill Farm Corp.*, 447 F.3d at 263 (quoting *Overton Park*, 401 U.S. at 416).

The Court finds that the USCIS did not make a clear error of judgment in concluding that Ren did not work in a managerial or executive capacity at Triple-R. To begin, Elizur, as petitioner, bore the burden of establishing Ren's eligibility for the EB1C visa. 8 U.S.C. § 1361; *see also Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) ("It is well settled that the applicant for a visa bears the burden of establishing eligibility.") Additionally, the petitioner must prove by a preponderance of the evidence that the beneficiary is fully qualified for the benefit sought. *See Matter of E-M-*, 20 I&N Dec. 77 (BIA 1989). Elizur, through its original petition, supporting documentation, and response to the Request, needed to establish that Ren worked primarily in a managerial or executive capacity. It did not do so.

The Request sent by USCIS to petitioner asked for a "detailed job description" for Ren that would be "crucial" for USCIS's decision making. (AR 9.) The letter in response from Triple-R's Deputy General Manager, however, described Ren's position at Triple-R in general terms. The letter described vague tasks such as "manag[ing] the company's overall strategic direction" and "ma[king] executive level decisions on strategic daily operations." (AR 19.) Similar to the job descriptions provided by the petitioner in *Tianhai Electric North America, Inc. v. Johnson*, these descriptions "offer little insight into [Ren's] day-to-day role at the company," as the descriptions are "conclusory and not buttressed by specific details." *See* No. 14-cv-10016, 2015 WL 12731911, at *4 (E.D. Mich. Dec. 8, 2015). Without more specifics about Ren's day-to-day actions and responsibilities, the Court cannot determine that USCIS made a clear error in finding that "the beneficiary's job description does not support that he was employed in a qualifying capacity as a multinational executive with the foreign company." (AR 5.)

Additionally, the job descriptions provided by Elizur did not show by a preponderance of the evidence that Ren was *primarily* working in a managerial or executive capacity, as required by 8 U.S.C § 1101(a)(44)(A) and (B).  The Request to Elizur asked for a description of "[a]ll specific daily duties (rather than categories of duties)" and the "[p]ercentage of time spent on each duty." (AR 10.)  Instead, Elizur provided USCIS with general descriptions and percentage breakdowns that did not correlate into daily breakdowns, such as "[e]stablish[ing] and maintain[ing] smooth communication channels with clients, suppliers, government agencies, financial institutes and other departments; responsible for public relations to establish sound corporate image (Total of 20%)." (AR 20.)  These "general descriptions of business-related tasks" and ambiguous percentages did not allow the USCIS to determine how much time Ren spent on each task, and whether these duties were "primarily managerial or executive." *See Tsiva, Inc. v. Att'y Gen., Dep't of Just.*, No. 3:12-cv-631-J-34PDB, 2014 WL 6675607, at *7 (M.D. Fla. Nov. 24, 2014).

Furthermore, some of the descriptions provided by Triple-R described tasks that were clearly not managerial or executive in nature, such as monitoring staff training and coordinating company sales activities.  (AR 20.)  USCIS stated that because Elizur "did not provide a sufficiently detailed breakdown of Mr. Ren's duties showing the percentage of time he spent on these non-qualifying duties, it was impossible for USCIS to conclude that Mr. Ren had been and would continue to be engaged in a *primarily* managerial or executive capacity."  (Def.'s Reply, ECF No. 36 at 11.)  A visa applicant cannot qualify "simply because he performs managerial tasks; such tasks must encompass his *primary* responsibilities." *Braz. Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008) (emphasis in original) (citing *Republic of Transkei v. INS*, 923 F.2d 175, 177-78 (D.C. Cir. 1991)).  Petitioner must prove to USCIS by a preponderance of the evidence that Ren performed primarily in a managerial or executive capacity while at Triple-

R.  The Court can only overturn the USCIS decision if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  See *Casa de Md.*, 924 F.3d at 703.  Based on the administrative record, it was not arbitrary and capricious for USCIS to find that petitioner did not establish that Ren worked in a primarily managerial or executive capacity at Triple-R.

2. USCIS Did Not Commit a Clear Error of Judgment in Concluding that Ren Was Not Working and Would Not Work in a Managerial or Executive Capacity at Elizur

Similarly, the Court finds that USCIS did not commit a clear error of judgment in concluding that Ren was not working and would not work in a managerial or executive capacity at Elizur.  When describing Ren's job at Elizur, Elizur continued to use vague descriptions, such as that Ren "will continue to drive and direct the high-level mission of aggressively managing a strong Marketing Department to open doors and generate sales contacts for the Sales Department . . . ."  (AR 37.)  Elizur also failed to provide a daily breakdown of Ren's tasks at Elizur, and instead opted to provide categories and percentages for Ren's duties, such as "Business Development (10%)" and "Operations (20%)."  (AR 32, 34.)  These categories were also divided into subcategories, like "Production Capabilities/Product Development & Production Direction" and "Human Resources/Staffing."  (AR 33-34.)  These categories, subcategories, and percentages are similar to those provided by the petitioner in *Decor Team LLC v. McAleenan*, No. CV-19-05346-PHX-MTL, 2021 WL 661974, at *5 (D. Ariz. Feb. 19, 2021).  In *Decor Team LLC*, USCIS determined that the "list of responsibilities" provided by the petitioner lacked details about the beneficiary's "actual day-to-day activities," and "[t]he descriptions also did not specify which tasks [were] executive or managerial in nature."  *Id.* (citations and internal quotations omitted).  The court found that USCIS "reasonably determined that [petitioner] did not demonstrate that [beneficiary]'s actual daily activities were managerial or executive in nature."  *Id.*  The Court's reasoning in *Decor Team LLC* is applicable here.

Additionally, the descriptions of Ren's duties at Elizur included clearly non-managerial or executive tasks that would not qualify him for an EB1C visa. For example, Elizur provided information that showed that Ren spent time supervising employees who were not "supervisory, professional, or managerial," such as employees who did not have any direct reports and who did not have a college or graduate school degree. (AR 42, 283.) Ren also did lower level tasks like training staff and reviewing customer orders. (AR. 35-36.) Because of the existence of these clearly non-managerial or executive tasks, and a lack of indication of how much time Ren spent on them, it was reasonable for USCIS to conclude that Elizur did not meet its burden of showing that Ren's duties at Elizur were *primarily* executive and managerial in nature. The Court, therefore, cannot find that USICS committed a clear error in judgment when it determined that Ren's position at Elizur was not in a primarily managerial or executive capacity.

3. Past Approval of Temporary Visas Does Not Make the Denial of a Petition for a Permanent Visa a Clear Error of Judgment

Case law strongly supports Defendant's position that USCIS's approval of Ren's L1A temporary visas did not render the denial of the petition for a permanent EB1C visa a clear error of judgment. As the Tenth Circuit explained, "The benefits of an I–140 visa (permanent residence) are distinct from those provided by an L–1A visa (temporary non-immigrant status), such that the grant of an L–1A visa does not require approval of a related I–140 petition." *Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 618 (10th Cir. 2016). Similarly, "the results of USCIS's analysis of an I-140 petition need not automatically mimic the conclusion USCIS reached when it approved an L-1A visa application even if the definitions of 'executive capacity' and 'managerial capacity' are identical for both L-1A visas and I-140 petitions." *Noble House, Inc. v. Wiles*, No. CV 12-7816 PA (RZx), 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013) (citations omitted); *see also Eat More Produce, LLC v. Sec'y, Dept. of Homeland Sec.*, No. 6:13-cv-432-Orl-31TBS,

2014 WL 1664814, at *3 (M.D. Fla. Apr. 25, 2014) (noting that USCIS subjects I-140 petitions "to much greater scrutiny" than petitions for temporary residency). Plaintiffs were unable to cite a case in which the grant of a L1A visa caused a Court to determine that the later denial of a petition for an EB1C visa was a clear error of judgment. Therefore, the Court finds that the approval of Ren's temporary visas did not cause the denial of the permanent visa to be arbitrary and capricious.

## VI. CONCLUSION

Therefore, for the foregoing reasons, the Court will GRANT Defendant United States Citizenship and Immigration Service's Motion for Summary Judgment (ECF No. 27) and will DENY Plaintiffs Chuncheng Ren and Elizur International Inc.'s Motion for Summary Judgment (ECF No. 33).

An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: May 5, 2021